IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES F. TRAMBLY, <br><br> Plaintiff, <br><br> vs. <br><br> THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, et al. <br><br> Defendants. | 4:20-CV-3094 <br><br><br> MEMORANDUM & ORDER |

James Trambly was fired from his job at the University of Nebraska-Kearney (UNK) in February 2019. Filing 3 at 11. Trambly claims the defendants—UNK, the University of Nebraska Board of Regents, and several University employees—discriminated against him on the basis of his disability and retaliated against him for requesting accommodations in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq.*, and Nebraska common law. Filing 3 at 8, 17.

This matter is before the Court on the defendants' partial motion to dismiss (filing 6) under Fed. R. Civ. P. 12(b)(1) and (b)(6) and Trambly's motion for leave to file an amended complaint (filing 14). For the reasons set forth below, the defendants' motion will be granted in part and Trambly's motion will be granted in part.

I. BACKGROUND

Trambly was hired by UNK in 2014 to work in its IT department. *See* filing 3 at 8. He has a "mental impairment which, when active, substantially limits at least one of his major life activities." And according to Trambly, UNK

and all of the named defendants in this case were aware of his impairment. Filing 3 at 11. Defendant Heidi Haussermann is the Assistant Director of Client Services – IT Client Services at UNK, and was Trambly's supervisor. Filing 3 at 5, 8. Trambly alleges that he requested accommodations for his disability "on multiple occasions" during his employment by UNK and was denied. And Trambly alleges that "about a year" after he was hired and "continuing off and on throughout his employment," Haussermann told him "she was tired of him bringing up his disabilities when he ask[ed] for accommodations." According to Trambly, in 2016 Haussermann said "if he continued to bring up his disabilities, she would fire him." Filing 3 at 8.

Trambly alleges Hausermann's comments "had a chilling effect" on his ability to gain accommodations which were necessary for him to do his job. Filing 3 at 8. Defendant Jane Petersen is the Director of Academic Support Services – IT Client Services, and Hausermann's supervisor. Filing 3 at 5, 9. According to Trambly, Haussermann and Petersen prevented him from communicating with upper management and resources outside the IT department. But Trambly also alleges that he complained "many times" to UNK's and the University of Nebraska's[1] human resources about Haussermann's and Petersen's discrimination. And according to Trambly, Haussermann retaliated against him by temporarily placing him in Bruner Hall despite his protests that it was "bad for his health," removing student workers from his supervision, and disparaging him to a coworker, thereby contributing to a hostile work environment. Filing 3 at 9.

---

[1] The University of Nebraska system includes several campuses across Nebraska including UNK, the University of Nebraska-Lincoln, the University of Nebraska-Omaha, and the University of Nebraska Medical Center. *See* filing 3 at 5; https://nebraska.edu.

Defendant Dylan Evans is the Senior Application Administrator – IT Infrastructure Services. Filing 3 at 6. According to Trambly, UNK directed defendant Evans to "hack [Trambly's] phone, email, work computer, and home computer, which has allowed Evans to delete emails and text messages to make [him] look incompetent, or to delete incidents of discrimination which [he had] documented. Filing 3 at 9. Trambly allegedly reported the hack to Rick Haugerud, Vice President of Identity Management, who agreed to "pull in a third party to look into the manipulation of [Trambly's] email," but nothing has yet come of the investigation. Filing 3 at 9-10.

On October 31, 2018 Trambly approached defendant Jane Sheldon, Associate Vice Chancellor for Business & Finance – Business Systems and Technology, about the situation. Trambly asked whether UNK wanted to take his job duties away from him, and Sheldon allegedly assured him that the IT department wanted nothing of the sort. But Trambly was reassigned to work more hours at the Help Desk, which became his primary responsibility. Filing 3 at 10.

On November 6, 2018 Trambly received "a verbal warning regarding services he had performed," but he alleges his work was performed correctly and the discipline was related to an IT work ticket that had been modified through UNK and Evans' alleged hack. On December 13, 2018, Trambly received a written warning for retaining ticket logs which he alleges were necessary to prove that UNK was manipulating tickets and making it appear like he took too long to complete jobs. Filing 3 at 10.

Defendant Jill Flagel is the Coordinator of Faculty/Staff Disability Services – Office of Institutional Equity and Compliance for the University of Nebraska. Filing 3 at 6. Beginning on November 18, 2018, Trambly contacted Flagel to request accommodations, but Flagel allegedly "consistently ignored"

Trambly and didn't provide him the paperwork to formally request accommodations. Filing 3 at 11.

On February 8, 2019, Trambly was terminated. Filing 3 at 11. Defendant Scott Benson, UNK Director of Human Resources – Processing and Payment Services, and defendant Cheryl Gardner, UNK Director of IT Services Human Resources, delivered the news to Trambly and told him he was "no longer coachable." Filing 3 at 6, 11.

## II. PROCEDURAL HISTORY

Trambly filed a charge of discrimination on the basis of disability with the Nebraska Equal Opportunity Commission and the Equal Employment Opportunity Commission and received a right to sue letter on April 9, 2020. Filing 3 at 7. Trambly filed suit and alleged that his performance always met or exceeded expectations, and that he was retaliated against for engaging in a protected activity—namely, requesting accommodations and "opposing a violation of law and protected benefits." Filing 3 at 11-12. According to Trambly, UNK's assertion that he was no longer coachable is merely a pretext. Filing 3 at 11. And defendants Douglas Christensen, Ted Carter, and the Board of Regents are all sued for failing to "properly and adequately supervise and exercise due care over their agents and employees who violated [Trambly's] civil rights," and for demonstrating "deliberate indifference." Filing 3 at 12-13.

In his initial complaint, Trambly claimed the defendants are liable for (1) violation of the ADA, (2) violation of the NFEPA, and (3) wrongful termination. *See* filing 3 at 14-17. And Trambly sought punitive and compensatory damages, attorney fees, and costs, but did not request injunctive relief (e.g. reinstatement). *See* filing 3 at 18.

The defendants moved for dismissal of all of Trambly's claims except the NFEPA claim against the Regents. Filing 7 at 2. According to the defendants,

dismissal is proper because: (1) UNK lacks the capacity to be sued under Nebraska law and is not a proper party under Fed. R. Civ. P. 17(b)(3); (2) the Eleventh Amendment bars suits against a State for money damages under the ADA; (3) claims against state employees in their official capacities are tantamount to suit against the State and also barred by the Eleventh Amendment; (4) the ADA does not provide for individual liability; (5) the individually named defendants are not "employers" as defined by the NFEPA; and (6) the wrongful discharge claims against all defendants are superseded by Trambly's statutory claims. Filing 6 at 2-3.

Trambly responded and conceded that UNK lacks capacity to be sued. Filing 16 at 3. In addition, Trambly filed a motion for leave to amend his complaint and a proposed amended complaint. Filing 14, filing 14-1. Trambly's proposed amended complaint re-alleges his claims under the NFEPA and ADA against only the Regents, but amends his ADA claim to specifically allege violation of Title II and Title V. *See* filing 14-1 at 9-11. It also abandons his claim for wrongful termination, and adds claims under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and 42 U.S.C. § 1983 against the Regents and the individual named defendants in their individual and official capacities. *See* filing 14-1 at 9-13. And it removes defendants UNK, Carter, and Kristensen. Filing 14-1 at 1.

The defendants opposed the motion for leave to amend, arguing that the addition of claims that cannot withstand a motion to dismiss makes amendment futile. Filing 18 at 2. In particular, defendants argue (1) Trambly cannot state a claim under Title II because Title I provides the exclusive avenue for employment discrimination claims under the ADA, (2) Eleventh Amendment immunity bars retaliation claims under Title V that are linked to Title I claims, and (3) Trambly's claims under the Rehabilitation Act and

§ 1983 fail as to the individually named defendants. Filing 18 at 6-8. So according to the defendants, if the Court permits amendment only the Rehabilitation Act and NFEPA claims against the Regents should proceed. Filing 18 at 8-9.

Trambly did not reply to defendants' third argument regarding the Rehabilitation Act and § 1983. *See* filing 21. He only argued that Title II does provide a cause of action for employment discrimination and so his proposed amendment is not futile. Filing 21 at 3.

The Court will treat the claims in both the complaint and proposed amended complaint that Trambly does not defend as abandoned.[2] So after the dust settles, the issues before the Court are (1) whether the Eleventh Amendment bars claims under Titles II and V of the ADA against the Regents, (2) whether Trambly's amended complaint states a claim under Titles II and V, and (3) what extent, if any, to grant Trambly leave to amend.

### III. STANDARD OF REVIEW
#### 1. RULE 12(B)(1)

A motion pursuant to Rule 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction

---

[2] Trambly's brief in opposition to defendants' motion to dismiss suggests that many of defendants' arguments are moot because of Trambly's proposed amended complaint. *See* filing 16 at 6-7. But it is the Court's obligation to decide whether Trambly's amended complaint could survive a motion to dismiss under Rule 12(b)(6), and thus whether his motion for leave should be granted. *Zutz v. Nelson,* 601 F.3d 842, 850 (8th Cir. 2010). So for present purposes Trambly has just abandoned the claims in his initial complaint he fails to defend against the defendants' motion to dismiss.

bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA,* 615 F.3d 985, 988 (8th Cir. 2010).

Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter,* 516 F.3d 709, 712 (8th Cir. 2008). A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.,* 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* Accordingly, the Court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). *Id.*; *Hastings v. Wilson,* 516 F.3d 1055, 1058 (8th Cir. 2008). Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Branson Label,* 793 F.3d at 914. The court has "substantial" authority to determine whether it has jurisdiction. *Osborn v. United States,* 918 F.2d 724, 730 (8th Cir. 1990).

Here, the defendants raise a facial attack to subject matter jurisdiction. Thus, Trambly enjoys the benefit of the allegations in his pleadings being accepted as true and viewed in the light most favorable to him. *See Hastings,* 516 F.3d at 1058.

### 2. RULE 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### 3. MOTION FOR LEAVE TO AMEND COMPLAINT

The Court should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). But the Court may deny a motion for leave to amend if amendment would be futile. *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Denial on the basis of futility is proper when the Court concludes that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6). *Id.*

### IV. DISCUSSION
### 1. SOVEREIGN IMMUNITY

Sovereign immunity encompasses two separate, but related, concepts: state sovereign immunity (a.k.a. common law sovereign immunity) and Eleventh Amendment[3] immunity (a.k.a. constitutional sovereign immunity). *Magnolia Venture Capital Corp. v. Prudential Sec., Inc.*, 151 F.3d 439, 443 (5th

---

[3] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Cir. 1998); *see also Alden v. Maine,* 527 U.S. 706, 713-15 (1999); *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996); *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 306 (1990); *Sherman v. Curators of Univ. of Mo.* 16 F.3d 860, 862 n. 2 (8th Cir. 1994). Sovereign immunity is a jurisdictional issue, as is the scope of any waiver. *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043-44 (8th Cir. 2000).

The Eleventh Amendment generally bars suits by private citizens against a State in federal court, *Balogh v. Lombardi,* 816 F.3d 536, 544 (8th Cir. 2016), particularly those suits that seek retroactive relief for violations of federal law that would require payment of funds from a State treasury, *United States v. Metro. St. Louis Sewer Dist.*, 578 F3d 722, 724-25 (8th Cir. 2009). But the amendment does not automatically divest the federal courts of jurisdiction. A State may waive the defense and voluntarily submit to jurisdiction in federal court. *Id*. at 725. Voluntary removal of a case to federal court effectively waives Eleventh Amendment immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002).

Similarly, state sovereign immunity generally bars suits by private citizens against a State in its own courts. See *Alden,* 527 U.S. at 729. And States may waive that immunity and consent to suit in their own courts. *Id. at* 755. But voluntary removal to federal court *does not* automatically waive state sovereign immunity. S*ee Kruger v. Nebraska,* 820 F.3d 295, 301 (8th Cir. 2016). In other words, if a State removes to federal court it consents to the jurisdiction of the court to hear only those claims that could have been brought by a private citizen in state court. *See id*.

Congress may also authorize private suits against nonconsenting States in both federal and state court under §§ 1 and 5 of the Fourteenth

Amendment.[4] *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 364-65 (2001) (federal court); *see Alden*, 527 U.S. at 756 (state court). When Congress enacts appropriate legislation to enforce the Fourteenth Amendment, federal interests are paramount, and Congress may assert an authority over the States which would be otherwise unauthorized by the Constitution. *Alden*, 527 U.S. at 756. Congress' power to enforce the Amendment includes the authority both to remedy and deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text. *Garrett*, 531 U.S. at 365. But § 5 legislation reaching beyond the scope of § 1's actual guarantees must exhibit congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. *Id.*; *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997).

The Supreme Court has addressed whether Congress validly abrogated immunity through the ADA on three occasions. In *Garrett*, the Supreme Court held that Congress' attempted abrogation of State sovereign immunity under Title I of the ADA was unconstitutional. 531 U.S. at 374. Title I prohibits employers, including States, from discriminating against individuals with disabilities "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12112(a), 12111(2), (5), (7); *id.* at 360-61. Title I also requires employers to:

---

[4] "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." *Id.* at § 5.

> mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business.

42 U.S.C. § 12112(b)(5)(A); *Garrett*, 531 U.S. at 361. The Court reasoned that Congress had failed to show a pattern of "unconstitutional state discrimination in employment against the disabled." *Id.* at 370. And where such a pattern was absent, Title I of the ADA as applied to the States was not congruent and proportional to an established injury. *Id.* at 374.

In *Tennessee v. Lane*, the Supreme Court held that Title II of the ADA was a valid exercise of Congress' § 5 enforcement power as applied to right of access to the courts. 541 U.S. 509, 533-34 (2004). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Lane,* 541 U.S. at 513. A "qualified individual with a disability" is:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). And a "public entity" includes "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." § 12131(1).

The *Lane* Court explained that "the sheer volume of evidence demonstrating the nature and extent of unconstitutional discrimination against persons with disabilities in the provision of public services," made clear that "inadequate provision of public services and access to public facilities was an appropriate subject for prophylactic legislation." 541 U.S. at 529. And the Court concluded that Title II's requirement that States "take reasonable measures to remove architectural and other barriers to accessibility" of courts was a congruent and proportional response to the problem as defined. *Id.* at 531-32.

The Court later expanded the validity of Title II's abrogation of sovereign immunity to "conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia,* 546 U.S. 151, 157-59 (2006). In *Georgia*, the plaintiff alleged that a State prison's failure to take reasonable measures to make the facility accessible violated both Title II and the Eighth Amendment prohibition against cruel and unusual punishment. *Id.* at 154-56. And the Court reasoned that where an alleged violation of Title II is based on conduct that independently violates § 1 of the Fourteenth Amendment, there is no question that Congress validly exercised its enforcement powers under § 5 to abrogate State sovereign immunity. *Id.* at 157-58. The Supreme Court directed lower courts evaluating Title II claims and sovereign immunity to determine, on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II

> but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159.

The Eighth Circuit has since decided that the *Georgia* framework for evaluating Title II claims must also govern Title V claims. *Lors v. Dean,* 746 F.3d 857, 864 (2014). The *Lors* court explained "[u]nder *Georgia*, we need not determine whether Title V of the ADA was a valid abrogation of sovereign immunity if the record on summary judgment establishes that Lors has no valid Title V claim against the defendants." *Id.* So in the Eighth Circuit, a Title V claim should be evaluated on the merits prior to reaching the abrogation issue. *Id.* And on a motion to dismiss, the Court should first determine whether a plaintiff has stated a claim that can survive a Rule 12(b)(6) motion to dismiss. *Id.* (favorably citing *Hale v. King,* 642 F.3d 492, 498 (5th Cir. 2011)).[5]

---

[5] It is somewhat difficult for the Court to reconcile the Eighth Circuit's directive to evaluate the Title V claim on the merits before addressing the question of sovereign immunity, with the accompanying principle that sovereign immunity "is a jurisdictional threshold matter, and presents a jurisdictional question that may be raised at any time." *Lors,* 746 F.3d at 861 (citations omitted). Such a directive is especially difficult at the motion to dismiss stage, where the Court is relying on the plaintiff's unchallenged allegations and a highly deferential standard of review. *See Iqbal,* 556 U.S. at 678; *Wilson v. Ark. Dep't of Human Servs.,* 850 F.3d 368, 372 (8th Cir. 2017) ("Under the simplified notice pleading standard that governs *McDonnell Douglas* retaliation claims, summary judgment motions—not motions to dismiss—should dispose of most unmeritorious claims"). It seems that a court could (and perhaps should) assume without deciding that the plaintiff *has* stated a claim for relief and proceed to the second and third prongs of the *Georgia* analysis to determine whether a State may be properly required to defend against a Title V claim, in order to avoid addressing the merits of a dispute before determining whether the court has jurisdiction to reach the merits.

It is with this law in mind that the Court now turns to the parties' arguments. Defendants argue that sovereign immunity[6] bars all of Trambly's claims under the ADA against the Regents. Filing 7 at 5-7. Trambly argues that while claims under Title I of the ADA are barred by sovereign immunity, claims under Title II and V of the ADA are not. Filing 16 at 3. And Trambly suggests that his claims are based in Title II and Title V of the ADA and requests leave to amend his complaint to make that explicit. Filing 16 at 3. Under *Lors*, because the defendants challenge Trambly's ADA claims on the basis of sovereign immunity, the Court must first decide whether Trambly's complaint states a claim for violation of Title II and Title V. 746 F.3d at 864. Fortuitously, that is the same standard used to evaluate whether Trambly's proposed amended complaint should proceed. *See Zutz*, 601 F.3d at 850.

The Eighth Circuit has not yet decided whether a plaintiff can properly assert a claim of employment discrimination under Title II. *See Bradley v. Little Rock Wastewater Util.*, 517 F. App'x 530, 533 (8th Cir. 2013). But the majority of Circuits have determined, using principles of statutory interpretation, that Title II unambiguously does not apply to employment related discrimination. *Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015); *Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 420-21 (4th Cir. 2015)*; Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013); *Elwell v.*

---

[6] The defendants refer to Eleventh Amendment immunity. As previously explained, the defendants likely waived Eleventh Amendment immunity from suit *in federal court* by voluntarily removing this case. *See Lapides*, 535 U.S. at 624; *Kruger,* 820 F.3d at 301. But removal does not waive State sovereign immunity from claims more broadly. *Kruger*, 820 F.3d at 301. So the Court must still determine whether the State is immune to Trambly's claims. *See Alden*, 527 U.S. at 756.

*Oklahoma ex rel. Bd. of Regents Univ. of Okla.*, 693 F.3d 1303, 1309-10 (10th Cir. 2012); *Zimmerman v. Ore. Dep't of Just.*, 170 F.3d 1169, 1178 (9th Cir. 1999). And others have simply held that Title I provides the exclusive remedy for employment discrimination claims under the ADA. *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 118 (3d Cir. 1998) (distinguishing Title III from Title I); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014-15 (6th Cir. 1997) (same). Only the Eleventh Circuit has reached the opposite conclusion. *Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist.*, 133 F.3d 816, 820 (11th Cir. 1998).

Trambly suggests that the Eleventh Circuit in *Bledsoe* employed better reasoning and should be followed. Filing 16 at 6. The Court disagrees. *Bledsoe* relied largely on legislative history and *Chevron*[7] deference to an agency interpretation of Title II to reach its decision. *See* 133 F.3d at 821-23. But legislative history and agency interpretations are relevant *only if* a statute is ambiguous. *See Velasquez v. Barr,* 979 F.3d 572, 576 (8th Cir. 2020) Ambiguity should be assessed using the language of the statute itself, the specific context in which that language is used, and the broader context of the statute as a whole. *Id*. The Circuits that have looked at Title II's text, including its definition of "qualified individual with a disability," as well as the broader context of the statute as a whole, have *all* concluded that Title II does not cover employment discrimination claims. *See, e.g.*, *Brumfield*, 735 F.3d at 626-629. And the Court finds the majority view not only more persuasive, but supported by the law of this Circuit. *See Velasquez*, 979 F.3d at 576.

Because Trambly's claims for both discrimination and retaliation unquestionably arise out of his employment, he has not stated a claim under Title II of the ADA that could survive a motion to dismiss. Trambly alleges that

---

[7] *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

he was hired by UNK to work in their IT department and that the defendants knew of his disability. Trambly alleges he later asked for accommodations and was denied. And Trambly alleges that his requests for accommodations were the protected behaviors that resulted in unlawful retaliation by the defendants. A claim for that type of employment-based discrimination arises solely under Title I of the ADA, and so Trambly has not stated a claim under Title II.

The Court now turns to Trambly's retaliation claim under Title V of the ADA.[8] The defendants cite *Demshki v. Monteith*, 255 F.3d 986, 988 (9th Cir. 2001) for the proposition that since Trambly's ADA claims may only be brought under Title I, the sovereign immunity that attaches to his Title I claim under *Garrett* also attaches to his corresponding retaliation claim under Title V. Filing 18 at 6. But that argument ignores the Eighth Circuit's precedent in *Lors*, which specifically rejects *Demshki*. 746 F.3d at 863-64. For his part, Trambly's only argument is that his Title V claim actually corresponds to a Title II claim and is therefore are not barred by sovereign immunity. Filing 16 at 6; *see* filing 21. But the Court has already explained why that argument is foundationally incorrect. In other words, *neither* party presents an argument on the law of sovereign immunity as applied to Title V of the ADA that is correct. And that leaves the Court in a bind.

*Lors* directs the Court to evaluate Trambly's Title V claim on the merits *independent* of his Title I claim, and before addressing whether Congress validly abrogated state sovereign immunity. But neither party has briefed whether Trambly's complaint states a claim for relief under Title V. Moreover, neither party has briefed the constitutional questions that the Court must

---

[8] "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a).

consider if Trambly's complaint *does* state a claim under Title V—namely, to what extent the alleged misconduct violated the Fourteenth Amendment, and insofar as the misconduct did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *See Lors*, 746 F.3d at 864.

Under these circumstances, in the absence of briefing on these issues, the Court declines to address the merits of Trambly's Title V claim under Rule 12(b)(6) and further declines to decide the constitutional questions outlined above.[9] So, Trambly's Title V claim may proceed, for now.

## 2. REHABILITATION ACT AND NFEPA CLAIMS

Trambly's proposed amended complaint includes a claim under the NFEPA against only the Regents, and adds claims under the Rehabilitation Act and § 1983 against the Regents and the individual named defendants in their individual and official capacities. *See* filing 14-1 at 9-13. As previously mentioned, defendants argue that the individual defendants cannot be sued under the Rehabilitation Act and § 1983, but concede that the Regents are a proper defendant for both the NFEPA and Rehabilitation Act claims. Filing 18 at 9. Trambly did not respond in defense of his claims against the individual defendants under the Rehabilitation Act and § 1983, and so those claims will be treated as abandoned. *See* filing 21. But his NFEPA and Rehabilitation Act claims against the Regents will proceed.[10] Trambly will be afforded leave to file

---

[9] And on a motion for summary judgment the Court will be better positioned to follow the Eighth Circuit's opinion in *Lors,* because a record will have been developed regarding the merits of Trambly's Title V retaliation claim.

[10] The defendants argue in a footnote that to properly plead a claim under the Rehabilitation Act, Trambly needed to allege that his disability served as the "sole impetus" for his adverse

an amended complaint—but not the amended complaint that he proposed, for the reasons explained above.[11] Accordingly,

IT IS ORDERED:

1. Defendants' motion to dismiss (filing 6) will be granted in part as set forth above.

2. Trambly's motion for leave to amend (filing 14) will be granted in part as set forth above.

3. Trambly may file an amended complaint on or before May 7, 2021 asserting claims against the Board of Regents of the University of Nebraska for violation of (1) Title V of the ADA, (2) NFEPA, and (3) the Rehabilitation Act.

4. Each of Trambly's remaining claims against all defendants are dismissed.

---

employment action, but failed to do so. Filing 18 at 6 n.6. The Court is not persuaded by this argument given that Trambly alleges that (1) he was disabled, (2) he always met or exceeded the reasonable expectations of UNK, (3) the reason given for his termination was a pretext and (4) he was actually fired because of his disability and requests for accommodations. Filing 14-1 at 4-7. Those allegations are sufficient to allege causation under the Rehabilitation Act. *See Wojewski v. Rapid City Reg'l Hosp.*, 450 F.3d 338, 344 (8th Cir. 2006).

[11] Because the Court has rejected several of Trambly's claims, both alleged and proposed, the filing of an amended complaint omitting claims the Court has rejected will not operate to waive Trambly's right to later appeal the Court's rulings in that regard. *See Acuity v. Rex, LLC*, 929 F.3d 995, 999 (8th Cir. 2019).

5.  All defendants *except* the Board of Regents of the University of Nebraska are terminated as parties.

6.  All other proposed amendments are denied as futile.

Dated this 26th day of April, 2021.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Chief United States District Judge